# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) |
| Appleseed's Intermediate Holdings, LLC, | ) Case No.: 11-10160-KG |
| et al., | ) |
|  | ) Chapter 11 Case |
| Debtors. | ) |
|  | ) |
|  | ) |
| Robert N. Michaelson, as Trustee of the | ) |
| Appleseed's Litigation Trust, | ) Adversary Proceeding No. 11-51847-KG |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Jury Trial Demanded |
|  | ) |
| Golden Gate Private Equity, Inc., et al., | ) |
|  | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF MOTION OF DEFENDANTS, JEFFREY D. FARMER, BRADFORD J. FARMER, BRENT BOSTWICK AND VITO KOWALCHUK TO WITHDRAW THE REFERENCE OF ADVERSARY PROCEEDING

Elizabeth A. Sloan
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel.: (302) 425-6400
Fax: (302) 425-6464
E-mail: sloan@blankrome.com

and

Ian M. Comisky
Earl M. Forte
BLANK ROME LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103
Tel.: (215) 569-5618
Email: forte@blankrome.com

Attorneys to Jeffrey D. Farmer, Bradford J.
Farmer, Brent Bostwick and Vito Kowalchuk

Dated: July 8, 2011

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ...................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

ARGUMENT ...................................................................................................................... 5

    A.    The Complaint Alleges Overwhelmingly State Law Claims Against the Defendants. All Claims Alleged Against the FBK Defendants Are Legal Claims Arising Under State Law. ........................................................................... 5

    B.    The FBK Defendants are Entitled to a Jury Trial in an Article III Court. ............... 7

    C.    The Bankruptcy Court Cannot Conduct the Jury Trial. ........................................... 9

    D.    Withdrawal of The Reference Is Required So A Jury Trial Can Proceed in the District Court. ..................................................................................................... 10

    E.    The Reference Must be Withdrawn Whether or Not this Adversary Proceeding is Designated as "Core". ................................................................... 11

    F.    Sound Reasons of Judicial Economy Support Immediate Withdrawal of the Reference of This Entire Adversary Proceeding For all Purposes. ....................... 12

    G.    Allowing This Adversary Proceeding to Remain in the Bankruptcy Court Could Raise Serious Constitutional Issues. .......................................................... 14

CONCLUSION.................................................................................................................. 17

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Antico Vacca Technologies, Inc. v. Etched Media Corp.,*
  2005 U.S. Dist. LEXIS 38904 (D. Del. July 1, 2005) ........................................................4, 13

*Billing v. Ravin, Greenberg & Zacklin, P.A.,*
  22 F.3d 1242 (3d Cir. 1994) ....................................................................................................8

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469, 82 S. Ct. 894 (1962)..........................................................................................9

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989)............................................................................................................*passim*

*Gray v. Solvay Polymers, Inc. (In re Dooley Plastic Co., Inc.),*
  182 B.R. 73 (D. Mass. 1994) ..................................................................................................4

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*
  121 B.R. 837, 838 (C.D. Cal. 1990) ................................................................................4, 13

*Holland American Ins. Co. v. Succession of Roy,*
  777 F. 2d 992, 999 (5th Cir. 1985) .......................................................................................10

*Hutchins v. APCC Services, Inc. (In re Star Creditors Liquidating Trust),*
  2004 U.S. Dist. LEXIS 3279 (D. Del. March 3, 2004) ....................................................4, 13

*In re Clay,*
  35 F.3d 190 (5th Cir. 1994) .....................................................................................................5

*In re Pruitt,*
  910 F. 2d 1160 (3d Cir. 1990) ...............................................................................................10

*Langenkamp v. Culp,*
  498 U.S. 42 (1990).............................................................................................................3, 9

*NDEP Corporation v. Handl-It, Inc.,*
  203 B.R. 905 (D. Del. 1996)............................................................................................*passim*

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
  458 U.S. 50, 102 S. Ct. 2858 (1982)..................................................................................3, 15

*OHC Liquidating Trust v. Discovery R (In re Oakwood Homes Corporation),*
  2007 U.S. Dist. LEXIS 51835 (D. Del. July 17, 2007) ........................................................10

ii

*Parsons v. Bedford,*
  3 Pet. 433, 477 (1830)......................................................................................................7

*Parks v. Visteon Corporation (In re Visteon Corporation),*
  2011 U.S. Dist. LEXIS 49302 (D. Del. May 9, 2011).............................................13

*Peachtree Lane Associates v. Granader.*
  175 B.R. 232 (N.D. Ill. 1994) ...............................................................................4

*Schoenthal v. Irving,*
  287 U.S. 92 (1932)...............................................................................................8

*Shalom Torah Centers/Shalom Torah v. Philadelphia Indemnity Ins. Co.,*
  2011 U.S. Dist. LEXIS 35726 (D.N.J. March 31, 2011)........................................13

*Smith v. Dowden,*
  47 F.3d 940 (8th Cir. 1995) .................................................................................9

*Stern v. Marshall,*
  __U.S.__, __S. Ct.__, 2011 WL 2472792 (U.S. June 23, 2011)......................*passim*

*Uni Marts, LLC v. NRC Realty Advisors, LLC (In re Uni Marts, LLC, et al.),*
  2009 U.S. Dist. LEXIS 49770 (D. Del. June 11, 2009)....................................*passim*

**STATUTES**

11 U.S.C. § 157(e) ..................................................................................................*passim*

11 U.S.C. §§ 544(b) and 550 ..................................................................................6

11 U.S.C. § 548.................................................................................................2, 5, 12

28 U.S.C. § 157.................................................................................................15

28 U.S.C. § 157(a)...........................................................................................10

28 U.S.C. § 157(b)..........................................................................................5

28 U.S.C. § 157(b)(2) ...................................................................................5, 11

28 U.S.C. § 157(b)(2)(C)...............................................................................15

28 U.S.C. § 157(b)(2)(H)...............................................................................11

28 U.S.C. § 157(d).......................................................................................3, 10

28 U.S.C. §§ 157(e) .....................................................................................5, 9, 10

28 U.S.C. § 1334(a).......................................................................................10

iii

**OTHER AUTHORITIES**

Constitution of the United States ........................................................................................ 2, 7, 15

Fed. R. Bankr. P. 7012(b) ...................................................................................................... 2

Fed. R. Bankr. P. 9015(a) ...................................................................................................... 2

Fed. R. Civ. P. 38 ................................................................................................................... 2

Del. Bankr. L.R. 5011-1 ....................................................................................................... 11

## NATURE AND STAGE OF PROCEEDINGS

On January 19, 2011 (the "Petition Date"), Appleseed's Intermediate Holdings, LLC and twenty-seven (27) of its wholly-owned subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), initiating case no. 11-10160-KG (the "Bankruptcy Case"). A general proof of claim bar date was set by the Bankruptcy Court for April 1, 2011 [Bankruptcy Case Docket No. 280]. None of the moving defendants, Jeffrey D. Farmer, Bradford J. Farmer, Brent Bostwick or Vito Kowalchuk (collectively, the "FBK Defendants"), filed proofs of claim.

Less than three months after the Petition Date, on April 14, 2011, the Bankruptcy Court entered an order confirming the Debtors' joint plan of reorganization (the "Plan") [Bankruptcy Case Docket No. 649]. The Plan provided, *inter alia*, that certain alleged causes of action would be transferred to the "Appleseed Litigation Trust" (the "Trust") and could be pursued in a subsequent action to be filed by the trustee of the Trust, Plaintiff Robert N. Michaelson (the "Trustee").

On April 27, 2011, the Trustee filed his Complaint in the Bankruptcy Court initiating this adversary proceeding. *See* Complaint, attached hereto as Exhibit 1.[1] Through their attorneys, the FBK Defendants agreed to accept service of the Complaint without prejudice. On May 26, 2011, Jeffrey D. Farmer, Bradford J. Farmer and Brent Bostwick filed a demand for a jury on all issues so triable. [Adversary Docket No. 5]. A similar jury demand was filed for Vito

---

[1] The Complaint referenced as Exhibit 1 has been filed, in unredacted form, under seal, pursuant to the Bankruptcy Court's April 14, 2011 Order. [Bankruptcy Case Docket No. 648]. The Complaint was filed and docketed by the Trustee in redacted form, but was provided in unredacted form to the FBK Defendants by the Trustee's counsel. The FKB Defendants reserve their right to challenge the propriety of the Trustee having filed the Complaint in redacted form and to question whether the "Complaint" and the claims at issue have been properly and/or timely filed.

Kowalchuk on June 23, 2011. [Adversary Docket No. 12]. The FBK Defendants do not consent

to a jury trial in the Bankruptcy Court, which is not specially designated by the district court to

conduct jury trials. *See* Fed. R. Bankr. P. 9015(a); Fed. R. Civ. P. 38; and 11 U.S.C. § 157(e).

The FBK Defendants also do not consent to the entry of final orders by the Bankruptcy Court.

*See* Fed. R. Bankr. 7012(b). The FBK Defendants now move for immediate withdrawal of the

reference of this entire adversary proceeding to the Bankruptcy Court for all pre-trial and trial

proceedings and for a jury trial in the district court.

## SUMMARY OF ARGUMENT

The Complaint alleges overwhelmingly state law claims against the defendants. Five of

those claims alleged are against the FBK Defendants - four for the recovery of intentional and

constructive fraudulent transfers (Counts I, II, III and IV) and one for corporate waste (Count

XI). All Counts brought against the FBK Defendants seek to recover money damages and are

brought under state law. *See* Complaint at ¶¶ 77, Exhibit B, 182, 190, 198, 206, 261, and prayer

for relief at ¶¶ A. and E.

Because the FBK Defendants did not file proofs of claim in the Bankruptcy Case, the

Trustee's state law claims against them for money damages do not invoke the equitable process

of claims allowance and are legal claims to which the jury trial right attaches pursuant to the

Seventh Amendment to the Constitution of the United States. *See Granfinanciera, S.A. v.*

*Nordberg*, 492 U.S. 33, 36, 37, 43, 44, 47, 48, 49, 53, 56 (1989) (in a case involving fraudulent

transfer claims brought under 11 U.S.C. § 548 by a trustee in bankruptcy pursuant to a confirmed

plan, the Supreme Court stated that fraudulent conveyance suits are "quintessentially suits at

common law that more nearly resemble state-law contract claims brought by a bankrupt

corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered

2

claims to a pro rata share of the bankruptcy res"); *see also Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (claims to avoid preferential transfers by a trustee are legal in nature to which a jury trial right attaches under the Seventh Amendment if the defendant did not file a proof of claim against the debtor's estate); *Uni Marts, LLC v. NRC Realty Advisors, LLC (In re Uni Marts, LLC, et al.)*, 2009 U.S. Dist. LEXIS 49770 (D. Del. 2009) (where the debtor filed an adversary complaint for breach of contract seeking money damages and no proof of claim was filed by the defendant, the bankruptcy court's equitable jurisdiction was not invoked).[2]

The FBK Defendants have not been dilatory about asserting their jury trial rights, nor have they waited until some opportune moment or until after an unfavorable ruling in these proceedings to seek withdrawal of the reference. The FBK Defendants' jury demands were filed on May 25 and June 23, 2011, shortly after service was accepted and notices of appearance filed by their counsel.

The FBK Defendants have also brought this motion timely. While the applicable statute, 28 U.S.C. § 157(d), gives no specific time by which a motion to withdraw the reference must be filed, it does require that such a motion be brought "timely". 28 U.S.C. § 157(d). Given the very early stages of this litigation, the timing of this motion satisfies this legal standard. Moreover, the bankruptcy process has been completed, and this is now purely a litigation case. The main Bankruptcy Case was filed less than seven months ago, on January 19, 2011, and the Plan was confirmed on April 14, 2011. The Trustee's Complaint was filed post-confirmation on April 27,

---

[2] It should be noted that based on the Supreme Court's recent decision in *Stern v. Marshall*, __U.S.__, __S.Ct, 2011 WL 2472792 (U.S. June 23, 2011), it now appears doubtful that even the filing of proofs of claim by the FBK Defendants would change the characterization of the Trustee's claims against them as claims under state law designed to augment the bankruptcy estate that must be decided by an Article III court. *Stern v. Marshall*, 2011 WL 2472792 at *19, *20, *21, *24 ("it is hard to see why Pierce's decision to file a proof of claim should make any difference with respect to the characterization of Vickie's [ the debtor's] counterclaim...Pierce's claim for defamation in no way affects the nature of Vickie's counterclaim for tortious interference as one at common law that simply attempts to augment the bankruptcy estate – the very type of claim that we held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court").

3

2011, and service of process was just recently accomplished. No motions or pleadings have been filed in response to the Complaint, no pre-trial conference has been conducted and no scheduling order has been entered.[3] Nor has any discovery been initiated. The adversary docket shows essentially no litigation activity at this juncture. This is not a situation in which a large litigation matter has been active and pending before the Bankruptcy Court for an extended period of time and a substantial, well-developed judicial knowledge base will be lost if the reference is withdrawn and the case moved to the district court. Nor will withdrawal of the reference interfere with plan confirmation.

Under the circumstances and because the district court must preside over the jury trial in any event, efficiency and economy would be far better served if the reference of this entire adversary proceeding were withdrawn at this time and all proceedings moved to the district court for a jury trial. *See NDEP Corporation v. Handl-It, Inc.*, 203 B.R. 905, 909, 913 (D. Del. 1996) (citing *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990) and *Peachtree Lane Associates v. Granader.* 175 B.R. 232, 235 (N.D. Ill. 1994)("'cause' to withdraw the reference automatically exists in cases where the party seeking withdrawal is entitled to a jury trial under the Seventh Amendment")); *Uni Marts, LLC,* 2009 U.S. Dist. LEXIS 49770 at *5 (withdrawal of the reference granted in jury case to promote uniformity, expediency and effective use of the parties' resources); *Antico Vacca Technologies, Inc. v. Etched Media Corp.,* 2005 U.S. Dist. LEXIS 38904, at *4 (D. Del. July 1, 2005) (reference withdrawn in jury case to further economy); *Hutchins v. APCC Services, Inc. (In Re Star Creditors Liquidating Trust),* 2004 U.S. Dist. LEXIS 3279, at *3-*4 (D. Del. March 3, 2004) (reference withdrawn in a jury trial case to promote judicial economy); *Gray v. Solvay Polymers, Inc. (In re Dooley Plastic*

---

[3] A pre-trial conference was recently scheduled for July 14, 2011.

4

*Co., Inc.)*, 182 B.R. 73, 81 (D. Mass. 1994); *In re Clay*, 35 F.3d 190, 195-198 (5th Cir. 1994);

*see also* 28 U.S.C. §§ 157(e).

Nor does the fact that fraudulent transfer claims, which make up four of the five Counts

brought against the FBK Defendants and constitute the heart of the entire action, are listed as

"core" proceedings in 28 U.S.C. § 157(b)(2), change the result. The Supreme Court has held that

where a jury trial right exists, withdrawal of the reference is required without regard to whether a

proceeding is listed as "core" in 28 U.S.C. § 157(b), because absent the consent of all parties, the

bankruptcy court cannot conduct a jury trial even in a "core" matter. *See* 28 U.S.C. § 157(e); *see*

*also Granfinanciera*, 492 U.S. 33 at 58-59 (a defendant cannot be divested of its Seventh

Amendment right to a jury trial in a fraudulent transfer action brought post-plan confirmation by

an estate trustee under 11 U.S.C. § 548, merely because Congress designated fraudulent transfer

actions as "core"). The only Count against the FBK Defendants that does not seek recovery of

alleged fraudulent transfers is Count XI, which seeks to recover money damages for alleged

"corporate waste" under state law and is not a "core" proceeding. *See* Complaint at ¶¶ 259-262.

Furthermore, given the Supreme Court's recent decision in *Stern,* and while *Stern's* full

import is not yet clear, immediate withdrawal of the reference of this entire adversary proceeding

for all pre-trial and trial purposes for a jury trial in the district court, will help avoid any

Constitutional problems that could arise relating to the power of the Bankruptcy Court to enter

judgments in this matter.

## ARGUMENT

**A.    The Complaint Alleges Overwhelmingly State Law Claims Against the Defendants. All Claims Alleged Against the FBK Defendants Are Legal Claims Arising Under State Law.**

The Trustee's Complaint alleges overwhelmingly state law claims against the defendants.

It contains a total of sixteen (16) Counts, including Counts for: the avoidance and recovery of

5

intentional and constructive fraudulent transfers under state law (Counts I-VIII); breach of fiduciary duty under state law (Count IX); aiding and abetting breach of fiduciary duty under state law (Count X); corporate waste under state law (Count XI); civil conspiracy under state law (Count XII); willful and negligent payment of unlawful corporate dividends under state law (Count XIII-XIV); avoidance and recovery of preferential transfers (Count XV); and, objections to proofs of claim/equitable subordination (Count XVI).   Only two of the Complaint's sixteen counts (Counts XV and XVI) are purportedly based on claims created by the Bankruptcy Code. And with the possible exception of Count XVI (objections to proofs of claim/equitable subordination), the Trustee seeks no equitable relief, only the recovery of money damages based on various alleged cash payments received by the defendants, including alleged "Special Dividend" payments. *See* Complaint at ¶¶ 182, 190, 198, 206, 216, 224, 232, 240, 253, 258, 262, 266, 270, 274, 283 and prayer for relief at ¶¶ A.-G.

With respect to the FBK Defendants, the Trustee' claims against them are all legal claims brought under state law. The FBK Defendants are named as defendants only in Counts I-IV and XI.  Count I seeks avoidance of alleged fraudulent transfers pursuant to 11 U.S.C. §§ 544(b) and 550 on an intentional or "actual" fraudulent transfer theory under unspecified state fraudulent transfer or conveyance laws, while Counts II through IV seek avoidance of alleged fraudulent transfers pursuant to 11 U.S.C. §§ 544(b) and 550 on a constructive fraudulent transfer theory, also under unspecified state fraudulent transfer or conveyance laws. *See* Complaint at ¶¶ 172-206.  Count XI seeks a monetary recovery for alleged "corporate waste," also under unspecified state law.[4]    *See*   Complaint   at   ¶¶   259-262.    Under   the   Supreme   Court's   analysis   in

---

[4] The FBK Defendants specifically preserve all defenses and other arguments with respect to all Counts alleged against them, including, but not limited to, any applicable statute of limitations or statute of repose.

*Granfinanciera*, all of these claims are legal and subject to the FBK Defendants' jury trial right. *Granfinanciera*, 492 U.S. at 41, 42, 47.

**B.    The FBK Defendants are Entitled to a Jury Trial in an Article III Court.**

The Seventh Amendment to the Constitution of the United States states: "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Constitution of the United States, Amendment VII.    The Supreme Court has interpreted "suits at common law" to mean cases involving "suits in which legal rights were to be ascertained and determined, in contra-distinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera,* 492 U.S. at 41 (citing *Parsons v. Bedford*, 3 Pet. 433, 477 (1830)).    The "Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th Century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). To determine whether a claim is equitable or legal:

> [f]irst, we compare the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.  The second stage of this analysis is more important than the first.  If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claims to a non-Article III adjudicative body that does not use a jury fact finder.

*Id.* at 42. (footnote omitted) (citations omitted).    With respect to the third prong of the *Granfinanciera* test (i.e., whether Congress may and has assigned the claims to a non-Article III adjudicative body that does not use a jury), the Supreme Court discussed in *Granfinanciera* whether Congress had permissibly assigned to non-Article III tribunals the adjudication of

7

disputes arising in or related to bankruptcy proceedings. *Id.* The Supreme Court determined that Congress could permissibly assign such disputes to a non-Article III tribunal only if the dispute involved "public rights." *Id.* at 51. "Public rights" are those in which "the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." *Id.* (quoting *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442, 458 (1977)). "The category of public rights may include seemingly private rights, if they are closely integrated into a public regulatory scheme assigned to an administrative agency." *Billing v. Ravin, Greenberg & Zacklin, P.A.*, 22 F.3d 1242, 1246 (3d Cir. 1994).

Applying this test to the facts before it, the Supreme Court in *Granfinanciera* held that a defendant in a fraudulent transfer action, such as the FBK Defendants in this case, is entitled to a jury trial. *Id.* at 55-57, 64-65; *Stern v. Marshall*, __U.S.__, __S. Ct.__, 2011 WL 2472792, at *19. The Supreme Court also noted in *Granfinanciera* that under the former Bankruptcy Act, fraudulent transfer and preference actions were plenary suits, legal in nature, to which the Seventh Amendment jury trial right applied. *Id.* at 50, 43. ("There is no dispute that an action to recover preferential or fraudulent transfers were often brought at law in late 18th century England.") *See also Schoenthal v. Irving*, 287 U.S. 92 (1932) (suit by trustee in bankruptcy to recover preferential transfers is a suit for money damages and is legal).

As noted above, the Complaint in this adversary proceeding alleges five counts against the FBK Defendants, four for the recovery of money damages for receipt of alleged fraudulent transfers (Counts I-IV) and one for the recovery of money damages for alleged corporate waste (Count XI). All five of these counts are brought under state law and each one seeks to recover

8

money damages from the FBK Defendants for alleged receipt of so-called "Special Dividends."

*See* Complaint at ¶¶ 76-77, Exhibit B.  Under *Granfinanciera* and its progeny, it cannot be

seriously disputed that the Trustee's claims against the FBK Defendants are legal not equitable

and that the Seventh Amendment jury trial right attaches.  This is especially true when (as here)

the parties asserting the jury trial right have not filed proofs of claim in the debtor's bankruptcy

case.  *Smith v. Dowden*, 47 F.3d 940, 942 (8th Cir. 1995); *Langenkamp v. Culp*, 498 U.S. 42, 45

(1990) ("If a party does not submit a claim against the bankruptcy estate, however, the trustee

can recover allegedly preferential transfers only by filing what amounts to a legal action to

recover a monetary transfer.  In those circumstances the preference defendant is entitled to a jury

trial").[5]

## C.    The Bankruptcy Court Cannot Conduct the Jury Trial.

Bankruptcy courts cannot conduct jury trials unless they are specially designated for that

purpose by the district court and only if all parties to the proceeding consent.  28 U.S.C. §

157(e); *NDEP Corporation v. Handl-It, Inc.*, 203 B.R. at 908.  Section 157(e) of the Judiciary

Act provides the only authority for bankruptcy courts to conduct jury trials.  It states:

> (e) If the right to a jury trial applies in a proceeding that
> may be heard under this section by a bankruptcy judge, the
> bankruptcy judge may conduct the jury trial if specially designated
> to exercise such jurisdiction by the district court and with the
> express consent of all the parties.

---

[5] Even assuming *arguendo* that the corporate waste count against the FBK Defendants (Count XI) is determined to be equitable despite the fact that it seeks money damages, this would not change the conclusion that the FBK Defendants are entitled to a jury trial.  In civil actions that present both legal and equitable claims, courts must preserve the jury trial right and allow the legal claims to be decided first and then decide any remaining equitable claims. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, 82 S. Ct. 894 (1962).  Thus, even if the Court were to decide that the Trustee's Complaint presents both legal and equitable claims (the FBK Defendants are of the firm view that all Counts against them are legal) that would not change the requirement to withdraw the reference now and move this entire adversary proceeding to the district court for a jury trial.  Indeed, due to overlapping issues in all Counts of the Trustee's Complaint, withdrawal of the reference of this entire adversary proceeding is the only feasible way to promote uniformity and efficiency. *Id.; see also, Uni Marts, LLC*, 2009 U.S. Dist. LEXIS 49770 at *4 (reference withdrawn of entire case for a jury trial in the district court on legal claims despite the presence of equitable claims in order to promote uniformity, expediency and the efficient use of the parties' resources).

9

28 U.S.C. § 157(e). In this district, the Bankruptcy Court is not specially designated by the district court to conduct jury trials and the FBK Defendants do not consent to a jury trial in the Bankruptcy Court. Therefore, the jury trial must be conducted in the district court.

## D. Withdrawal of the Reference is Required so a Jury Trial Can Proceed in the District Court.

Bankruptcy jurisdiction is vested in the district courts pursuant to 28 U.S.C. § 1334(a). Under 28 U.S.C. § 157(a), the district courts may refer bankruptcy cases and any or all proceedings arising in or related to bankruptcy cases, to the bankruptcy courts. Under 28 U.S.C. § 157(d), the reference of a case or proceeding to the bankruptcy court may be withdrawn by the district court "for cause shown" (referred to as "permissive withdrawal") or if laws of the United States relating to interstate commerce other than title 11 must be considered (referred to as "mandatory withdrawal"). *OHC Liquidating Trust v. Discovery R (In re Oakwood Homes Corporation)*, 2007 U.S. Dist. LEXIS 51835, at \*4-6 (D. Del. 2007). 28 U.S.C. § 157(d) states:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). This case involves so-called "permissive withdrawal". In determining whether there is "cause" for permissive withdrawal of the reference, the Third Circuit has set forth the following factors to be considered: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; and, (4) expediting the bankruptcy process. *In re Pruitt*, 910 F. 2d 1160, 1168 (3d Cir. 1990) (citing *Holland American Ins. Co. v. Succession of Roy*, 777 F. 2d 992, 999 (5th Cir. 1985)). A further consideration (which is determinative, regardless of the

10

other factors) is whether a jury trial has been demanded. *NDEP Corporation*, 203 B.R. at 908; *see also In re Uni Marts, LLC*, 2009 U.S. Dist. LEXIS at *5. Cause for withdrawal of the reference exists where, as in this case, a litigant is entitled to a jury trial, and the bankruptcy court lacks authority to conduct the jury trial, and all parties have not consented to a jury trial in the bankruptcy court. *NDEP Corporation*, 203 B.R. at 914.[6]

As previously stated, the district court has not specially designated the Bankruptcy Court to conduct jury trials and the FBK Defendants do not consent to a jury trial in the Bankruptcy Court. Therefore, "cause" exists to withdraw the reference of this adversary proceeding.

**E.    The Reference Must be Withdrawn Whether or Not this Adversary Proceeding is Designated as "Core".**

As required by Del. Bankr. L.R. 5011-1, concurrently with this motion, the FBK Defendants have filed a Motion for Determination of Core/Non-Core Status. Four of the five Counts lodged against them seek to recover money damages for alleged fraudulent transfers. Fraudulent transfer claims are included in the non-exclusive list of "core" proceedings in 28 U.S.C. § 157(b)(2). *See* 28 U.S.C. § 157(b)(2)(H). However, this motion must be granted regardless of a determination of "core" status, because where the jury trial right attaches, absent the consent of all parties, a bankruptcy court cannot conduct a jury trial even in "core" matters. 11 U.S.C. § 157(e); *see also Granfinanciera*, 492 U.S. 33 at 58-59 (a party cannot be divested of its Seventh Amendment right to a jury trial merely because Congress has designated an action as a "core proceeding").

---

[6] Given the Supreme Court's decisions in *Granfinanciera* and *Stern*, in a case such as this one in which a defendant in an action filed in the bankruptcy court has a Seventh Amendment jury trial right and the claims asserted against that defendant are legal claims under state law, there is now effectively a judicial mandate to withdraw the reference upon timely motion.

11

F.     **Sound Reasons of Judicial Economy Support Immediate Withdrawal of the Reference of This Entire Adversary Proceeding For all Purposes.**

Withdrawal of the reference should occur without delay and for all pre-trial and trial proceedings. Such a result would promote uniformly, efficiency and economy.

Similar to the facts in *Granfinanciera*, the Plan in this case has been confirmed, and the reorganization process completed. *See Granfinanciera*, 492 U.S. at 37. Reorganization will not be delayed if this matter proceeds in the district court. *Granfinanciera*, 492 U.S. at 63 (noting that because the trustee's fraudulent transfer suit under 11 U.S.C. § 548, was commenced after the bankruptcy court had approved the debtor's plan of reorganization, a jury trial on the fraudulent transfer claim would not impede a swift resolution of the bankruptcy proceedings or increase the expense of the chapter 11 reorganization, even though "these considerations are insufficient to overcome the clear command of the Seventh Amendment"). Like *Granfinanciera*, this case is now purely a post-confirmation litigation matter.

The adversary proceeding is in its infancy. The Bankruptcy Court has yet to develop any special or time-worn familiarity or expertise with the facts or claims alleged and will be required to transfer the case to the district court for a jury trial in any event, causing the need for a second judge to learn the case and get up to speed shortly before a jury trial. The facts at issue involve commercial transactions that are well within the competency of the district court and require no particular specialized bankruptcy expertise. Virtually all Counts alleged in the Trustee's Complaint arise under state law and the recovery of money damages is at the heart of the entire action. All Counts against the FBK Defendants are legal claims and arise under state law.

This is not a case in which a particular piece of litigation has been before the Bankruptcy Court for a number of years and/or where specialized Bankruptcy Code-created claims control. Rather, the overwhelming majority of all Counts alleged, including *all* Counts against the FBK

12

Defendants, are state law legal claims. No inefficiency or added burden will result for the parties from an immediate transfer of this entire matter to the district court for all pre-trial and trial purposes. To the contrary, immediate transfer of this entire matter to the district court will make this litigation more cost efficient for all parties by having all pretrial proceedings before the same judge who will preside at trial. There is ample support for this conclusion in case law from within this Circuit. As the district court stated in *In re NDEP Corporation*:

> Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in the litigation.

*NDEP Corporation*, 203 B.R. at 913 (*citing Gumport v. Growth Finance Corporation (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990)); *see also Parks v. Visteon Corporation (In re Visteon Corporation)*, 2011 U.S. Dist. LEXIS 49302, at *11 (D. Del. May 9, 2011) (withdrawal of the reference granted in a personal injury case despite the presence of an issue about whether the claimant had waived his jury trial right); *Shalom Torah Centers/Shalom Torah v. Philadelphia Indemnity Ins. Co. et. al.*, 2011 U.S. Dist. LEXIS 35726, at *8, *18 (D.N.J. March 31, 2011) (withdrawal of the reference granted in a contract dispute where a jury trial was demanded, with the court accepting the argument that withdrawal would permit the bankruptcy court to focus on pending plan confirmation and noting that judicial economy would be served); *Antico Vacca Technologies*, 2005 U.S. Dist. LEXIS, at *3-*5 (withdrawal of the reference granted on the ground of judicial economy where the defendants were entitled to a jury trial); *Hutchins v. APCC Services, Inc.*, 2004 U.S. Dist. LEXIS 3279, at *4 (D. Del. March 3, 2004) (withdrawal of the reference granted in a preference action in which the defendant had a right to a jury trial and where the court determined that withdrawal would serve judicial economy; noting

13

that having the proceeding in the bankruptcy court until it was jury trial ready would not promote uniformity of bankruptcy administration, nor would it reduce forum shopping, foster the economical use of the parties' resources or expedite the bankruptcy process); *Uni Marts, LLC*, 2009 U.S. Dist, LEXIS 49770, at *5-*6 (withdrawal of the reference of entire case granted in a jury trial matter that presented both legal and equitable claims and where the court determined that withdrawal of the reference would promote uniformity, expediency and the most effective use of the parties' resources).

**G.    Allowing This Adversary Proceeding to Remain in the Bankruptcy Court Could Raise Serious Constitutional Issues.**

In light of the Supreme Court's June 23, 2011 decision in *Stern*, there is now a serious question as to whether the Bankruptcy Court is Constitutionally empowered to decide this adversary proceeding, jury trial or no jury trial.

In *Stern*, the title 11 debtor, Vickie Lynn Marshall ("Vickie") filed a personal bankruptcy petition in the Central District of California. *Id.* at *6. One E. Pierce Marshall ("Marshall"), the son of Vickie's late husband, filed a complaint in that case seeking a declaration that his claim against Vickie for defamation was non-dischargeable. Marshall also filed a proof of claim for defamation. In response, Vickie filed a counterclaim to Marshall's complaint, alleging tortious interference by Marshall in an alleged legacy to Vickie from her late husband, Marshall's father. *Id.*

The bankruptcy court granted summary judgment in favor of Vickie on Pierce's defamation claim and after a bench trial also ruled in Vickie's favor on her state law claim for tortious interference, awarding her $400 million in compensatory damages and $25 million in punitive damages. *Id.* at *7. Pierce appealed the bankruptcy court's decision to the district court. By the time Pierce's appeal was decided by the district court, a state court in Texas had

14

conducted a jury trial on the merits of the parties' dispute and had rendered a verdict in Pierce's favor. The district court declined to give the Texas judgment preclusive effect. The district court affirmed the bankruptcy court, but reduced Vickie's award to $44 million in compensatory damages and $44 million in punitive damages. *Id.* Pierce appealed further to the Ninth Circuit, which reversed on different grounds. Pierce then petitioned the Supreme Court for review, which took the case and reversed and remanded back to the Ninth Circuit. On remand, the Ninth Circuit held that 28 U.S.C. § 157 mandated "a two-step approach" under which a bankruptcy judge may issue a final judgment in a proceeding only if the matter "meets Congress' definition of core proceeding *and* arises under or arises in title 11." *Id.* at *8. The Ninth Circuit further reasoned that allowing bankruptcy judges to enter final judgments on all counterclaims would run afoul of its prior decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 (1982). It concluded that "a counterclaim under § 157(b)(2)(C) is properly a 'core' proceeding 'arising in a case under' the Bankruptcy Code only if the counterclaim is so closely related to a creditor's proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself." *Id.* at *8.

In affirming the Ninth Circuit, the Supreme Court noted that while counterclaims by title 11 debtors, such as Vickie's counterclaim against Pierce for tortious interference, are listed as "core" matters in 28 U.S.C. § 157(b)(2)(C), thereby permitting the bankruptcy court to enter final judgment, "Article III of the Constitution does not" permit bankruptcy courts to enter judgments on such claims. *Id.* at * 14. The Supreme Court stated:

> It is clear that the Bankruptcy Court in this case exercised the "judicial power of the United States" in purporting to resolve and enter final judgment on a state common law claim, just as the court did in *Northern Pipeline*... Vickie argues that this case is different because the defendant is a creditor in the bankruptcy. But the debtor's claims in the cases on which she relies were

15

> themselves federal claims under bankruptcy law, which would be completely resolved in the bankruptcy process of allowing or disallowing claims. Here Vickie's claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy…
>
> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. Accordingly, the judgment of the Court of Appeals is affirmed.

*Stern v. Marshall*, __.U.S.__,__ S. Ct.__, 2011 WL 2472792 at * 17, *27.

Thus, in *Stern,* the Supreme Court determined that when a debtor (or trustee) brings a claim under state law, the requirement that the claim be decided by an Article III court cannot be avoided simply because that state law claim is brought by an estate representative, is designated "core," or is brought in response to a creditor's proof of claim. Rather, if the claim brought by the estate representative is a state law claim that is "independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy" the bankruptcy court lacks Constitutional authority to enter a judgment on that claim. *Id.*

*Stern* did not address the Seventh Amendment jury trial right, and its full import remains to be determined. However, *Stern* supports the conclusion that this entire adversary proceeding must move immediately to the district court – the FBK Defendants have not filed proofs of claim, have demanded a jury and all Counts against them (as are the overwhelming majority of claims against all the defendants) arise under state law and are independent of federal bankruptcy law. These facts, when considered in conjunction with the sound reasons of judicial economy discussed above and the presumption in favor of Article III courts noted by the Supreme Court in

16

*Stern*, weigh heavily in favor of immediate withdrawal of the reference of this entire adversary proceeding for all purposes. *Id.* at *24.

## CONCLUSION

The FBK Defendants request that their motion be granted and that the Court enter an order immediately withdrawing the reference of this entire adversary proceeding for all pre-trial and trial proceedings for a jury trial in the district court. Based on the facts presented, this motion can be granted solely on the authority of the Supreme Court's decision in *Granfinanciera* but is further supported by the Supreme Court's recent decision in *Stern*.

Respectfully submitted,

JEFFREY D. FARMER, BRADFORD J. FARMER, BRENT BOSTWICK and VITO KOWALCHUK

Dated: July 8, 2011

By:    */s/ Elizabeth Sloan*
One of their attorneys
Elizabeth A. Sloan
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel.: (302) 425-6400
Fax: (302) 425-6464
E-mail: sloan@blankrome.com

and

Ian M. Comisky
Earl M. Forte
BLANK ROME LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103
Tel.: (215) 569-5618
Email: forte@blankrome.com

Attorneys for Defendants, Jeffrey D. Farmer, Bradford J. Farmer, Brent Bostwick and Vito Kowalchuk

17